UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL PETER SPITZAUER,<br><br>Defendant. | No.   13-CR-6071-SMJ<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS CASE OR SUPPRESS EVIDENCE** |

A motion hearing occurred in the above-captioned matter on December 18, 2014. Defendant Michael Spitzauer was present, represented by Christopher Black. Assistant U.S. Attorney (AUSA) Mary Dimke appeared on behalf of the U.S. Attorney's Office (USAO). Before the Court was Defendant's Motion to Dismiss Case or Suppress Evidence. ECF No. 101. At the hearing, the Court heard the testimony of FBI Special Agent David DiBartolo, Sergeant Jeremy Welch, IRS Special Agent Jason Smith, IRS Investigative Assistant Darrell Kaiser, Carey Sullivan, Detective Douglas Stanley, and Lieutenant Robert Guerrero, and received into evidence Plaintiff's Exhibits 1 through 22 and Defendant's Exhibits A through N. ECF No. 126.

//

1    The Court finds that while the Yakima and Benton County Jails were

2    reckless[1] in meeting their responsibility to protect Defendant's Sixth Amendment

3    rights by failing to timely register defense counsel's phone numbers into non-

4    record status, there is neither evidence of a purposeful intrusion into the attorney-

5    client relationship nor any evidence that defense strategies were communicated to

6    the prosecution team, due in large measure to the efforts of the USAO and

7    prosecution team to sufficiently firewall themselves from the content of any

8    recorded attorney client calls.  Accordingly, Defendant's motion is denied.

9    ## I.    <u>BACKGROUND</u>

10    On December 10, 2013, Defendant was indicted on ten counts of wire

11    fraud, two counts of aggravated identity theft, and six counts of money

12    laundering.    ECF No. 1.    On December 11, 2013, Defendant voluntarily

13    surrendered himself to the United States Marshals Service.    Since that time,

14    Defendant has been detained in the Yakima County Jail pending trial other than a

15    period between April 2, 2014 and June 11, 2014 when Defendant was detained in

16    the Benton County Jail.  Both Benton and Yakima County Jails provide notice to

17    inmates that their calls are subject to recording and monitoring.  After Defendant

18    was detained, the United States endeavored to periodically review Defendant's

19    non-privileged telephone calls paced from the jail to monitor for interference with

20

---

[1] The Court received testimony that neither Benton nor Yakima County has a policy for handling recordings of inadvertently recorded attorney-client calls, which, while beyond the scope of this Order, is of surprise and concern to this Court.

ORDER - 2

1   witnesses and victims of the alleged offenses.  Throughout Defendant's detention,

2   the USAO has advised defense counsel of the government's monitoring and

3   provided copies of all the jail calls.

4         On December 16, 2013, FBI Special Agent David DiBartolo contacted

5   Sergeant Jeremy Welch with Yakima Department of Corrections (YDOC) about

6   obtaining Defendant's jail calls, however, at that time, no recordings existed.  Ex.

7   19.  On December 26, 2013, defense counsel faxed[2] Yakima County Jail a request

8   to have both his office and personal phone numbers placed in non-record status,

9   and provided both of the phone numbers and his bar card as proof that he was an

10  attorney.  ECF No. 101-3.  For reasons unknown to this Court, Yakima County

11  Jail failed to act on defense counsel's fax and did not place counsel's numbers into

12  non-record status.  Subsequently, on January 13, 2014, SA DiBartolo again

13  inquired about obtaining Defendant's jail calls, which at that time totaled 468.  On

14  January 13, 2014, at 12:16 PM, Sgt. Welch forwarded to SA DiBartolo an email

15  containing a link from Securus Technologies, Inc., Yakima County Jail's

16  telephone service provider.  ECF No. 101-5.  The link contained in the email

17  provided access for the next 24 hours to an image file containing all recorded calls

18  to date made by Defendant.  *Id.* at 3.  At 12:19 PM, after receiving the link, SA

19  DiBartolo responded that he would try to get the calls burned to a CD.  At 1:00

20  _____
    [2] Sgt. Welch states that the fax was sent to the fax number for the Yakima County Jail's Professional Visiting
    Services, which is the defense attorney's primary contact at the Yakima County Jail.  ECF No. 102-1.  Sgt. Welch
    does not know why the numbers listed on the fax were not registered

PM, in response to the number of calls, AUSA Alex Ekstrom inquired whether attorney calls had been filtered. Ex. 19. A few minutes later, SA DiBartolo indicated it did not appear Yakima filtered out attorney calls. At 2:33 PM, ASUA Dimke responded indicating she would get counsel's phone numbers so they could identify and segregate any attorney calls. Ex. 19. At the same time, AUSA Dimke advised defense counsel that the USAO would be obtaining Defendant's recorded calls and requested he provide the phone numbers he had used to communicate with his client. Mr. Black responded by emailing AUSA Dimke the same fax previously sent to Yakima County Jail. ECF No. 101-2. Three hours and twenty-one minutes after receiving the link to Defendant's jail calls, SA DiBartolo sent the following reply to Sgt. Welch regarding the email containing the link:

> Thanks for assisting with this. I have a couple questions:
>
> 1) Have attorney phone calls been filtered out? I know that some jails have a system where the inmate provides their counsel's telephone number and those calls are not recorded, does Yakima utilize such system or something similar? I can provide telephone numbers for Spitzauer's attorney if necessary.
>
> 2) Whether or not attorney calls are filtered, can you burn the jail calls to a CD and I can arrange for someone to pick them up? The software for the format sent I don't think is compatible with the security setting son [sic] my computer.

ECF No. 101-5. Twelve minutes later, Sgt. Welch advised that attorney calls would be filtered out if the numbers were listed in the system, that he could

double check if counsel's numbers were in the system, and that CDs could be made. *Id*. Three minutes later SA DiBartolo provided counsel's phone numbers. ECF No. 102-2.

On January 14, 2014, Sgt. Welch determined counsel's phone numbers were not registered with Securus as attorney numbers and therefore were not blocked from recording. That day, Sgt. Welch advised SA DiBartolo that attorney numbers had not been listed. He then entered the two phone numbers into the Securus system as "Private/Privileged" so calls would no longer be recorded. ECF No. 102-1. Accordingly, the Court finds that privileged attorney-client calls made between Defendant and Mr. Black between December 26, 2014, the date counsel advised Yakima County Jail of his phone numbers, and January 14, 2014, the date those phone numbers were entered as "Private/Privileged" in the Securus system, were improperly recorded and made available to SA DiBartolo by electronic link in the January 13, 2014 email. However, both at the time the link was provided, ECF No. 101-5, by sworn declaration before this Court, ECF No. 102-1, and in live testimony, which this Court finds credible, SA DiBartolo maintains the link would not function on his computer due to compatibility issues with his computer's security settings. By its own terms, the link only provided access to the files for 24 hours. ECF No. 101-5. Additionally, if attorney calls were not filtered out, SA DiBartolo maintains he would have recommended the

1  CD be given to a taint team to redact out the attorney jail calls.  ECF No. 102-1.

2  Accordingly, the Court finds no evidence establishing that SA DiBartolo accessed

3  privileged communications.

4         However, SA DiBartolo, on January 13, 2014, at 3:53 PM, forwarded to

5  both AUSA Dimke and Ekstrom Sgt. Welch's response that he would double

6  check to make sure attorney calls were filtered.  In doing so, SA DiBartolo

7  provided the prosecution team the entire email communication history, which

8  included the Securus link to Defendant's phone calls that included calls with his

9  attorney.  While this link was still functional for another 20 hours, Defendant has

10  advised the Court that Securus records indicate no one on the prosecution team

11  used the link to download or copy the phone calls.  Accordingly, this Court finds

12  that while the prosecution team had 20 hours in which they could have access

13  Defendant's calls that had not yet been screened for attorney communications, the

14  prosecutors on this case did not access them.

15        On January 15, 2014, Sgt. Welch, after manually removing calls between

16  Defendant and counsel, provided a CD to the FBI that contained Defendant's

17  remaining telephone calls.  ECF No. 102-1.  The FBI subsequently provided a

18  copy of the jail calls to 1) IRS Special Agent Jason Smith, and 2) to the USAO for

19  production to defense counsel.

20  //

ORDER - 6

On February 5, 2014, as part of the ongoing investigation, Tax Fraud Investigative Assistant (TFIA) Darrell Kaiser was reviewing Defendant's telephone calls provided on the CD from Yakima County Jail and summarizing the calls for SA Smith.  After listening to approximately three minutes of a December 27, 2013 call TFIA Kaiser realized the call was to an attorney.  TFIA Kaiser ceased listening to the December 27 call and informed SA Smith, who instructed him to stop listening to that call and not disclose the content of the conversation to anyone.  SA Smith then reviewed the list of phone numbers and confirmed the call belonged to a number associated with defense counsel.  At 8:50 AM, SA Smith informed AUSA Dimke that TFIA Kaiser had listened to three minutes of the call.  ECF No. 102-2.  AUSA Dimke instructed both SA Smith and SA DiBartolo to cease listening to any jail calls until it was determined that no other calls with counsel were on the CD.  Forty minutes later, after SA Smith confirmed no other calls to defense counsel's numbers were on the CD, AUSA Dimke authorized them to continue their review but not to listen to the December 27 call.  Also on the morning of February 5, AUSA Dimke contacted Sgt. Welch to inquire why the December 27 call was on the CD.  Sgt. Welch advised that he had to manually remove the attorney calls and "can only assume that [he] missed one in doing so."  ECF No. 102-2.  That same morning, AUSA Dimke advised defense counsel that three minutes of the December 27 call had been listened to by

an IRS analyst and advised Mr. Black of the actions she took in response.  ECF

No. 102-2.  SA Smith testified that approximately two weeks later, TFIA Kaiser

was removed[3] from working on this case.  TFIA Kaiser testified that after

listening to the December 27 call but before being removed from this case, he

reviewed and summarized approximately 21 more calls but did nothing else

substantively related to this case.  TFIA Kaiser testified he has not disclosed the

contents of the December 27 call to anyone.  Furthermore, while the December 27

call is on the FBI's copy of the CD, SA DiBartolo maintains he has not listened to

the call.  ECF No. 102-1.  Finally, to date, all of the attorney calls that were

recorded between December 11, 2013, and January 14, 2014, are no longer

available in the system after Sgt. Welch told Securus to remove them on January

14, 2014.  However, the call access history indicates that aside from burning the

calls to the CD for the FBI, no one accessed or listened to any of the calls through

Securus.  ECF No. 102-1.

On April 2, 2014, Defendant was transferred to Benton County Jail.  Benton

County Jail contracts with Telmate, LLC to provide telephone services to inmates.

Mr. Black first contacted the Benton County Jail to have his phone numbers

placed in non-record status, but the jail personnel referred him to Telmate despite

---

[3] TFIA Kaiser does indicate he has been limited to administrative duties, such as "mailing items for Special Agent Smith.  On one occasion, [he] was asked to generate a list of Bates numbers and locate documents in discovery that had previously been produced to defense counsel."  ECF No. 102-1.  TFIA Kaiser creditably testified he has had no substantive involvement in this matter.

the fact that Benton County Jail personnel can have attorney numbers listed as non-record. Telmate's records indicated Mr. Black contacted Telmate on April 9, 2014, and advised of his office numbers and asked they be registered to prevent recording. ECF No. 102-1. Telmate investigates each number before they block the number's calls from recording. This investigation into Mr. Black was completed and the numbers switched to non-record status on April 15, 2014.

On May 13, 2014, a Superseding Indictment issued adding two counts of filing a false tax return, three counts of bank fraud, and six additional counts of wire fraud. ECF No. 57.

As with Yakima County, while Defendant was in Benton County, the FBI continued to review recorded jail calls. On June 4, 2014, FBI Task Force Officer Douglas Stanley was on medical leave but permitted SA DiBartolo to use his access to Telmate to download recorded jail calls. On June 4, 2014, SA DiBartolo was given direct access to Telmate's system by Lieutenant Robert Guerrero of the Benton County Sheriff's Office. ECF No. 102-1. Throughout the investigation, when SA DiBartolo downloaded calls from the Telmate system, he was able to generate a list of the phone calls included, which allowed him to review the list to ensure Mr. Black's numbers were not listed. SA DiBartolo downloaded a series of calls on June 9, 2014. On June 18, 2014, SA DiBartolo reviewed a list of previously downloaded calls and notice the list included Mr. Black's office

1    number.  SA DiBartolo did not listen to any of the calls and informed AUSA

2    Dimke who directed him to contact Benton County to investigate why attorney

3    numbers were listed.

4         On June 18, 2014, Lt. Guerrero was contacted by SA DiBartolo and

5    subsequently investigated why calls with defense counsel were listed in the

6    Telmate System.  A report of the Telmate system listed five separate calls to Mr.

7    Black's office number: 1) January 10, 2012 at 11:15 AM, which is not related to

8    this case, 2) April 14, 2014 at 11:37 AM, 3) May 21, 2014 at 11:55 AM, 4) May

9    21, 2014 at 12:01 PM, and 5) June 6, 2014 at 11:08 AM.  ECF No. 102-2.  On

10   June 18, Lt. Guerrero listened to the fourth call, which consisted of Mr. Spitzauer

11   complaining to Telmate that his prior call had been cut short.  This is consistent

12   with the later determination by Telmate that the calls on May 21 and June 6 were

13   not phone calls to counsel.  While the call details show counsel's phone number,

14   these three calls were "issue reports," in which Defendant contacted Telmate to

15   report a problem with a call that had been made to counsel's phone number.[4]

16   Accordingly, while the log listed counsel's number they were not calls to counsel

_____

19   [4] The Court has reviewed *in camera* the audio of the May 21 calls and finds the audio corroborates that they were issue reports complaining about a previously placed call that was dropped.  Additionally, based upon the audio the Court finds that preceding each May 21 issue report call, Defendant had attempted to place a phone call to his attorney but the call was dropped.  For the dropped calls no audio exists, which this Court finds is indicative of Telmate's system properly not recording calls that were placed to counsel while properly recording issue report calls made to Telmate.

ORDER - 10

nor were they privileged, and therefore, those three calls were properly recorded. ECF No. 102-2.

However, on June 18, Lt. Guerrero also listened to the second call (April 14, 2014 at 11:37 AM), but after hearing a woman's voice accept the call and transfer it to a male, he stopped listening.  ECF No. 102-2.  This second call, made on April 14, 2014, was a call between Defendant and his attorney Mr. Black that was recorded because Mr. Black's phone number was not yet switched to non-record status by Telmate.

Also on June 18, 2014, Lt. Guerrero contacted the Benton County Prosecutor's Office and was instructed to isolate the attorney calls so that no one could access or listen to the calls.  On June 19, 2014, Telmate indicated it could isolate and archive the call records and subsequently remove them from the Benton County Jail system so they could not be accessed.  ECF No. 102-2. Telmate records, Ex. 17, indicate that on July 2, 2014 at 11:45 AM, Lt. Guerrero again listened to the April 14 call.  Telmate employee Carey Sullivan testified that the log will indicate "listen" anytime someone clicks the audio icon on the system. Lt. Guerrero testified that on July 2, he clicked the audio icon to determine if the audio had been removed.  When it appeared that audio was about to play he closed it and contacted Telmate to inquire why the audio had not yet been removed and archived. Ex. 22 (July 2, 2014 at 11:49 AM email).  Mr. Sullivan testified that on

December 16, 2014, he clicked the audio icon associated with the April 14 call but no audio was available indicating it had been successfully removed and archived.

On July 15, 2014, a Second Superseding Indictment issued adding a charge of tax evasion.  ECF No. 80.

On November 24, 2014, Defendant filed the pending Motion to Dismiss Case or Suppress Evidence, alleging violations of his Fifth and Sixth Amendment rights requires either dismissal of this case or the suppression of evidence.  ECF No. 101.  On December 9, 2014, a Third Superseding Indictment issued adding eleven more counts of wire fraud and four additional counts of aggravated identity theft.  ECF No. 107.

On December 18, 2014, Defendant's motion, ECF No. 101, came before this Court for a motion hearing.

## II.    DEFENDANT'S MOTION TO DISMISS OR SUPPRESS EVIDENCE

Defendant alleges that the violations of his Sixth Amendment right to counsel and his Fifth Amendment right to due process as well as this Court's supervisory powers justify either dismissal of the indictment or suppression of evidence.  In response, the USAO maintains that not only is such relief not justified, but also, that Defendant implicitly waived any privilege in the communications at issue by failing to timely raise the issue.

//

**A.    Waiver of Privilege**

In determining whether the privilege should be deemed to be waived, the circumstances surrounding the disclosure are to be considered. *United States v. de la Jara*, 973 F.2d 746, 749 (9th Cir. 1992). The Ninth Circuit has previously "held that the attorney-client privilege may be waived by implication, even when the disclosure of the privileged material was 'inadvertent' or involuntary." *Id*. at 749-50. The Ninth Circuit deems the privilege waived "if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter." *Id*.

Here, the Court finds the privilege has not been waived. Defense counsel was timely advised in both February and July of 2014 that recorded attorney calls were discovered. On July 3, 2014, Mr. Black was provided a copy of the report from Benton County regarding their investigation into why an attorney call was recorded. After the second time that attorney calls were recorded, counsel, in July 2014, sought subpoenas to investigate the scope of the recording of attorney calls by Benton and Yakima Counties, and the subpoenas issued on August 1, 2014. Pursuant to Federal Rule of Criminal Procedure 17, the subpoenaed records were delivered to this Court. Pursuant to Rule 17(c)(1) the Court reviewed the records and then determined it was appropriate to permit defense counsel to inspect the records, which were subsequently picked up on September 10, 2014. After having

the records for seventy-five days, Defendant filed the pending motion to dismiss. The Court finds that Defendant, after learning of at least two occasions on which attorney calls were recorded prudently decided to conduct an independent investigation to determine the scope of the recordings. The Court finds this a reasonable means of preserving the privilege in this matter, and therefore find privilege has not been waived.

**B.    Sixth Amendment Right to Counsel**

"[I]mproper interference by the government with the confidential relationship between a criminal defendant and his counsel violates the Sixth Amendment only if such interference 'substantially prejudices' the defendant." *Williams v. Woodford*, 306 F.3d 665, 683 (9th Cir. 2002). To determine if substantial prejudice has occurred, the Ninth Circuit uses a two-step analysis. First, "the government [. . .] must have acted affirmatively to intrude into the attorney-client relationship and thereby to obtain the privileged information." *United States v. Danielson*, 325 F.3d 1054, 1071 (9th Cir. 2003). "In order to show that the government's alleged intrusion into the attorney-client relationship amounted to a violation of the Sixth Amendment, a defendant must show, at a minimum, that the intrusion was purposeful, that there was communication of defense strategy to the prosecution, *or* that the intrusion resulted in tainted evidence." *United States v. Fernandez*, 388 F.3d 1199, 1240 (9th Cir. 2004)

1   modified, 425 F.3d 1248 (9th Cir. 2005). "[O]nce the prima facie case has been

2   established, 'the burden shifts to the government to show that there has been . . .

3   no prejudice to the defendant[ ] as a result of these communications.'" *Danielson*,

4   325 F.3d at 1071 (quoting *United States v. Mastroianni*, 749 F.2d 900, 908 (1st

5   Cir. 1984)).   "The particular proof that will satisfy the government's 'heavy

6   burden,'. . . will vary from case to case, and we therefore cannot be specific as to

7   precisely what evidence the government must bring forward." *Id.* at 1072. "[T]he

8   mere assertion by the government of the integrity and good faith of the

9   prosecuting authorities is not enough."   *Id.*   "The government must present

10  evidence, and must show by a preponderance of that evidence, that all of the

11  evidence it proposes to use, and all of its trial strategy, were derived from

12  legitimate independent sources.  In the absence of such an evidentiary showing by

13  the government, the defendant has suffered prejudice."   *Id.* (citations and

14  quotations omitted).  The prosecution team can avoid this burden "by insulating

15  itself from privileged trial strategy information." *Id.* (reviewing with approval the

16  use of taint teams and firewalls).

17      Here, Defendant has failed to demonstrate a prima facie case of an intrusion

18  into the attorney-client relationship because there was neither purposeful intrusion

19  nor communication of defense strategy to the prosecution team.  First, the initial

20  recording of the attorney-client calls by both Benton and Yakima Counties

resulted from what the Court finds to be a reckless delay on the part of both jails to timely register Mr. Black's phone numbers as attorney numbers that should not be recorded.  There is no evidence that either jail purposefully recorded attorney-client calls.  Furthermore, while SA DiBartolo indicated in an email to Sgt. Welch that he wanted a CD of Defendant's calls "whether or not attorney calls are filtered" the contemporaneous email communications between SA DiBartolo and the AUSAs on the prosecution team indicate a clear intent to ensure that before any calls were listened to by the prosecution team, that all attorney calls should be filtered out.  Additionally, while SA DiBartolo and both AUSAs potentially had access to attorney-client communications for approximately 20 hours due to the forwarded link to the Securus system, the Court finds there is no evidence of a communication of defense strategy to the prosecution team because the Securus logs indicate that no one from the prosecution team accessed those calls.  Finally, while Lt. Guerrero and TFIA Kaiser both listened to a portion of an attorney-client call, both credibly testified that they did not communicate the content of the calls to the prosecution team.  Further, an *in camera* review of the audio leads this Court to conclude that from the December 27 and April 14 calls no defense strategy could have been deduced even if the prosecution team was told the content of the calls.  Accordingly, the Court finds Defendant has failed to demonstrate a prima facie case of an intrusion into the attorney-client relationship.

1    However, even if Defendant could make such a showing, the Court finds

2  the prosecution team sufficiently isolated itself from any attorney-client

3  communication or individuals who had knowledge of the content of such

4  communications.  First, before reviewing Defendant's calls, the USAO took

5  affirmative steps to learn the phone numbers used by Mr. Black to make contact

6  with Defendant, and attempted to ensure all of the calls produced had been filtered

7  of any calls to those numbers.  Second, both times attorney calls were discovered

8  all reviewing of Defendant's calls ceased until it was determined no further

9  attorney calls existed.  Third, when TFIA Kaiser listened to approximately three

10  minutes of an attorney call, not only did the USAO advise defense counsel that

11  same day but it also removed TFIA Kaiser from any substantive involvement with

12  the investigation and trial preparation.  Finally, there is no evidence that the key

13  prosecution team members, AUSA Dimke, AUSA Ekstrom, AUSA Goeke, SA

14  DiBartolo, or SA Smith, ever learned of the content of any privileged

15  communications.  Accordingly, the Court finds the prosecution team properly

16  isolated itself from any privileged trial strategy information.

17  //

18  //

19  //

20  /

1    **C.    Fifth Amendment Due Process Right and Court's Supervisory Powers**

2        An indictment may be dismissed with prejudice under either of two

3    theories:

4        [First, a] district court may dismiss an indictment on the ground of
         outrageous government conduct if the conduct amounts to a due
5        process violation.  [Second, i]f the conduct does not rise to the level
         of a due process violation, the court may nonetheless dismiss under
6        its supervisory powers.

7    *United States v. Barrera–Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991) (citations

8    omitted).  To violate due process, governmental conduct must be "'so grossly

9    shocking and so outrageous as to violate the universal sense of justice.'"  *United*

10   *States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991).  "Due process is not

11   violated unless the conduct is attributable to and directed by the government."

12   *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991).

13   Additionally, a district court may exercise its supervisory power "to implement a

14   remedy for the violation of a recognized statutory or constitutional right; to

15   preserve judicial integrity by ensuring that a conviction rests on appropriate

16   considerations validly before a jury; and to deter future illegal conduct."  *United*

17   *States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991).  However, because

18   "[d]ismissing an indictment with prejudice encroaches on the prosecutor's

19   charging authority," this sanction may be permitted only "in cases of flagrant

20   prosecutorial misconduct."  *Id*. at 1091.  "[A]ccidental or merely negligent

governmental conduct is insufficient to establish flagrant misbehavior." *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008). A court may dismiss an indictment under its supervisory powers only when the defendant suffers "substantial prejudice," *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988), and where "no lesser remedial action is available," *Barrera–Moreno*, 951 F.2d at 1092.

Here, the county jails' reckless conduct that resulted in recorded attorney-client calls does not establish sufficient flagrant misbehavior to amount to a due process violation. The prosecution team, as discussed above, properly insolated itself from those attorney calls and anyone who inadvertently learned the contents of those calls. Far from shocking or outrageous, this is the conduct the Court expects prosecutors to implement to ensure a defendant's constitutional rights are protected. Accordingly, the Court finds no violation of Defendant's Fifth Amendment rights and does not find any flagrant prosecutorial misconduct that would justify this Court using its supervisory powers to dismiss the indictment.

## III.    CONCLUSION

Ultimately, the facts in this case do not demonstrate that Defendant has suffered a substantial prejudice. While the county jails reckless failure to timely ensure Mr. Black's phone numbers were in non-record status resulted in some attorney-client calls being recorded, the evidence does not demonstrate a

purposeful intrusion into the attorney-client relationship and the USAO took appropriate steps to properly shield the prosecution of this case from the conduct of the county jails. Accordingly, the Court finds no reason to exercise its supervisory powers to dismiss this indictment or suppress evidence, and finds no violation of Defendant's Fifth or Sixth Amendment rights. Therefore Defendant's motion is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1.     Defendant's Motion to Dismiss Case or Suppress Evidence, **ECF No. 101**, is **DENIED**.

2.     Per the parties' oral stipulation at the December 18, 2014 hearing, the Court extends the January 2, 2015 expert disclosure deadlines to January 20, 2015. All other deadlines in the Court's Case Management Order, ECF No. 99, remains unchanged.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 19th day of December 2014.

_____
SALVADOR MENDOZA, JR.
United States District Judge